SANBORN, Appellant, vs. KNIGHT, Respondent.

*May 25 — June 23, 1893.*

*Public lands: Pre-emption: Cancellation by subsequent acts.*

A pre-emptor, after filing a declaratory statement covering one tract
of land, wholly abandoned his pretended settlement and alleged
pre-emption claim thereon, and filed a subsequent or amended state-
ment covering another tract, upon which he actually settled, and
of which he obtained a patent as a pre-emptor.  *Held*, that such
acts operated as a cancellation or relinquishment of the first de-
claratory statement, and restored the public character of the lands
covered thereby.

APPEAL from a judgment of the circuit court for Ashland
county: O. B. WYMAN, Judge.   *Affirmed.*

Action to recover damages for the alleged breach of cer-
tain covenants contained in a deed of conveyance of the
southwest quarter of the northwest quarter of section 35,
town 48 N., range 4 W., in Ashland county, made by the
defendant to *James S.* and F. L. Sanborn, November 17, 1887.
The deed contained the ordinary covenants.   The complaint
charged the breach of each and all of them.   The purchase

price of the premises was $6,000, $3,000 of which was paid down, and the balance secured by the note and mortgage of the purchasers for that sum, which was subsequently paid. F. L. Sanborn, one of the covenantees, transferred and conveyed to the plaintiff, *James S. Sanborn*, all his right, title, and interest in the premises, and in and to the benefits of the covenants contained in the deed.

It is alleged that the plaintiff and his partner, F. L. Sanborn, entered upon the premises in good faith, under the said deed; but that at the time of the execution and delivery thereof, and for many years prior thereto, said land had been held in the possession of, and owned by, the United States under a better and superior title; and that thereupon the plaintiff and his partner withdrew from and left said premises, and had not since been thereon claiming possession thereof. The plaintiff alleged breaches of each and all of the covenants contained in the deed, and averred that the defendant was not well seised of the premises as covenanted in the deed at the time of the execution thereof, and was not the rightful owner thereof, but that the same was then, and for a long time prior thereto had been, exclusively owned by the United States; and it was alleged generally that the defendant had broken all the covenants contained in said deed, and always failed, neglected, and refused, and still did neglect and refuse, to perform or make good any of the covenants contained therein; and damages were claimed in the sum of $7,830.66 and interest.

To show that the defendant was not seised of the premises in question at the time of the execution and delivery of the deed, it was alleged and proved that March 10, 1856, Joseph La Pointe, under and pursuant to the pre-emption laws of the United States, made and filed in the United States land office in the district in which said land was situated, a declaratory pre-emption statement, alleging settlement upon said land on January 1, 1856; and it was claimed

that at the time of the commencement of this action said pre-emption filing had not been canceled of record; that about the year 1889 the defendant made a claim of right to purchase said land from the United States, and thereafter prosecuted his claim in the land department of the United States to a final determination. The defendant, by way of answer, alleged and proved that neither the grantees in his said deed nor the plaintiff were ever in any manner disturbed in their possession of said premises taken under the same, and that the defendant duly purchased whatever title or claim to said premises the United States might have possessed, if any, and that the same was duly granted and conveyed to this defendant by letters patent of the United States duly executed under date of November 21, 1896, and recorded in Ashland county registry December 7, 1896.

At the conclusion of the testimony, the court, on motion of the defendant, directed a verdict in his favor, upon which judgment was entered against the plaintiff, dismissing his complaint with costs, from which he appealed.

The tract in question was within ten miles of the line of the Wisconsin Central Railroad, and in the place limits of the grant to that company, under the act of Congress of May 5, 1864, and also within the fifteen-mile or "indemnity" limits of the grant made by the act of June 3, 1856 (11 Stats. at Large, 20). It was not disputed but that the state legislature, by divers acts, granted these lands to the Wisconsin Central Railroad Company on condition that it should build the required railroad, or that it did in fact construct the road within the time limited, and become entitled to the lands applicable thereto, under the third section of the act of 1864; nor but that the state thereupon, by its deed of conveyance executed by the governor as the statute directed, on the 25th of February, 1884, conveyed the land in question to the Central Company with other lands granted in like manner; nor but that whatever claim to the tract, if

any, might have arisen in favor of the Chicago, St. Paul, Minneapolis & Omaha Railway Company by the construction of the road required by such first section by its predecessor or itself, was relinquished to the Central Company in an agreement between the two companies for an adjustment of the questions arising from the overlap of the two grants near Lake Superior, evidenced by an instrument in writing filed with the governor before the execution by him of the deed on the part of the state to the Wisconsin Central Company; and it was shown that the said lands were conveyed to the defendant by deed of the Wisconsin Central Company of June 1, 1887.

The defendant, who had bought a section and a half of land from the Wisconsin Central Company, including the tract in question, soon thereafter, under the act of March 3, 1887 (24 Stats. at Large, 556), made application, as a purchaser in good faith from the railroad company, to buy the same from the United States; and his application, though filed before any homestead entry on his land, was contested by persons who purposed to make, or subsequently did make, such homestead entries, and though at first granted in January, 1890, by the land officers at Ashland, was litigated on appeal by the parties in interest before the commissioner of the general land office and the Secretary of the Interior for years, and until it was decided by the supreme court of the United States that the lands in question passed by the grant of May 5, 1864, and became the property of the Wisconsin Central Railroad Company by the acts and deed of the state already mentioned. *Wis. Cent. R. Co. v. Forsythe*, 159 U. S. 46. Subsequently, on the 29th of August, 1896, said *Knight's* application to purchase said lands under the act of Congress aforesaid was allowed, and he was held to have been a *bona fide* purchaser of the same, within the meaning of the said act of Congress. Pursuant to such decision, he made payment for the lands in question in section 35, for which cash

entry certificates were issued to him, and approved for patenting; and November 21, 1896, a patent was issued for said lands, in due form, by the United States, to the said *John H. Knight*, and was given in evidence on the trial.

The plaintiff relied upon the pre-emption declaratory statement filed March 10, 1856, by Joseph La Pointe, to prove a want of seisin in the defendant at the time he made his conveyance, and that the lands in question were thereby excepted from the operation of said railroad grant.     *Whitney v. Taylor*, 158 U. S. 85.     And the defendant, in answer to these claims, produced testimony to show that this declaratory statement had been canceled in fact and in law; that Joseph La Pointe, who filed it, never made any settlement whatever upon the land mentioned in said statement, never inhabited or improved it, nor did any work upon it, nor did he erect any dwelling thereon.     And it was proved that, during the same spring said declaratory statement was filed, La Pointe moved across Chequamegon Bay, made there an actual settlement upon a tract of public land (the northwest quarter of section 17, township 47, range 4 W., on the Sioux river), and then filed a subsequent or amended declaratory statement, on the 23d of May, 1856, alleging, in accordance with the fact, settlement thereon on the 20th of that month, and June 29, 1857, proved up, paid the purchase money, and obtained his patent for that land as a pre-emptor.

*Charles S. Carter* and *W. J. Turner*, for the appellant.

For the respondent there was a brief by *Wm. F. Vilas*, of counsel, and *J. J. Miles*, attorney, and oral argument by *Mr. Vilas*.

PINNEY, J.     The claim that the grant of May 5, 1864, through which the defendant claimed title to the single tract of land in question, under the Wisconsin Central Railroad Company, never attached to the land, by reason of the declaratory statement of Joseph La Pointe, filed March 10, 1856,

Sanborn vs. Knight.

is wholly destitute of merit. This claim or filing does not appear to have been pursued or acted on by any one. It clearly appears that La Pointe never made any settlement whatever upon the land mentioned in it, never inhabited or improved it, or did any work on it, and never erected any dwelling thereon. It appears that he never did anything upon or in relation to the land to fulfill the requirements of the law. The clear and satisfactory evidence produced at the trial disposes of all contention or room for it founded on the document in question. After filing this document, and during the same spring, La Pointe wholly abandoned his pretended settlement and alleged pre-emption claim. He moved across the Chequamegon Bay, taking with him his family, and made there an actual settlement and entry upon the northwest quarter of section 17, township 49, range 4 W., on the Sioux river, and then filed a subsequent or amended declaratory statement, May 23, 1856, alleging, in accordance with the truth, settlement on the 20th of that month, and afterwards, on June 29, 1857, proved up, paid the purchase money for the quarter section named, and obtained his patent for that land as a pre-emptor. This was an absolute abandonment and surrender of all pretensions or claims under the declaratory statement filed on March 10, 1856, and operated as a cancellation or relinquishment of it. The law allows but one pre-emption right, and but one pre-emption claim also, to one person. R. S. of U. S. sec. 2261. The second claim, however, is allowed in proper cases, and it is sometimes called an amendment of the first. *In re Young*, 1 Land Dec. Dep. Int. 443; *In re Walsh*, 6 Land Dec. Dep. Int. 168. It seems impossible to mistake the effect of the second proceeding upon La Pointe's first declaratory statement. It utterly destroyed it, substituting for the land described in it an entirely different tract. *Amacker v. N. P. R. Co.* 15 U. S. App. 279, 58 Fed. Rep. 850.

We think, therefore, that the point of exception from the

grant of lands in question by reason of the declaratory state-
ment of Joseph La Pointe of March 10, 1856, wholly fails,
and that the plaintiff and F. L. Sanborn, by the conveyance
to them from the defendant, acquired a valid title and be-
came lawfully seised of the premises in question in fee simple
before the plaintiff began the present action. No cause of
action, therefore, for breach of the covenant of seisin existed
against the defendant. The defendant's grantees obtained
possession or seisin in fact of the premises, and possessed and
enjoyed them under their deed. They had not, when this
action was commenced, been evicted by paramount title,
either actually or constructively, from any part of the prem-
ises, and no breach of the covenant of seisin contained in
the defendant's deed to the plaintiff and F. L. Sanborn had
occurred.

For these reasons, the plaintiff was not entitled to recover,
and the verdict in favor of the defendant was rightly di-
rected, and judgment given in his favor.

*By the Court.*— The judgment of the circuit court is af-
firmed.

MARSHALL, J. So far as the opinion of the court may be
read as holding that the railroad grant attached to the land
in question because Joseph La Pointe did not do those things
requisite to make his pre-emption filing effectual, independ-
ent of the withdrawal of the filing by taking other lands in
lieu of those covered by it, I cannot concur. Probably it
was not intended to say that the mere neglect by La Pointe
to comply with the pre-emption law, so long as his filing
was actually of record, would leave the land open to the
grant. But if so intended, it is, in my view, directly con-
trary to the decision of the supreme court of the United
States in *Whitney v. Taylor*, 158 U. S. 85, where Mr. Justice
BREWER, discussing the subject, said, in effect, that wher-
ever on the records of the local land office, there was a

claim on the part of an individual under the homestead or pre-emption laws, recognized by the officers of the government, and not canceled or set aside, the tract in respect to which such claim existed was excepted from a railroad land grant containing the ordinary exception clause, notwithstanding the claim was not enforceable and was subject to cancellation by the government, either upon its own suggestion or upon the application of other parties; and further, in effect, that the existence of a homestead entry, or a declaratory statement under the pre-emption laws, operated to take the particular land affected thereby out from the mass of public lands and give it such private character as to except it from the operation of a railroad grant.

I concur fully with what is said by the court to the effect that the taking of other lands by La Pointe, after the filing of his declaratory statement, and in lieu of the lands described therein, before the withdrawal of lands for the purposes of the railroad grant, effectually canceled such declaratory statement, and so restored the public character of the lands described therein as to leave them subject to the operation of such grant.